**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Raymond ROSE,
Defendant–Appellant.**

**No. 89–1010.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1989.
Decided Nov. 20, 1989.

Donald A. Scheer, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Civil Div., Detroit, Mich., for U.S.

Steven F. Fishman (argued), Detroit, Mich., for William Raymond Rose.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

William Rose appeals his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).

I.

On July 17, 1986, two Drug Enforcement Agency (DEA) Agents stationed at the Detroit Metropolitan Airport observed the appellant, William Rose, deplane Pan Am flight 504, a direct flight originating in Miami, Florida. The agents testified that the appellant descended the aircraft's stairwell at a "rapid pace" carrying only a duffel bag, then walked rapidly from the arrival gate to the far north exit of the international terminal without stopping at the baggage claim area. The appellant made several hurried phone calls, nervously shuffling his feet while talking, then left the airport terminal and entered his automobile which was parked in the short-term parking area.

DEA Agents Magee and Johnston, suspecting that the appellant might be a narcotics courier, attempted to detain him. Testimony regarding the manner of this detention differs. Appellant testified that the DEA agents stood in the middle of the road blocking the airport parking lot exit, whereas the agents testified that they merely approached the appellant's vehicle,

identified themselves, and asked the appellant if he would answer a few questions. Both parties agree, however, that the agents were dressed in civilian clothes and did not display weapons at the time of the stop.

Agent Magee asked the appellant to turn off his automobile because its loud muffler made conversation difficult. The appellant turned off the engine and stepped out of his automobile. Appellant testified that the officers ordered him to exit the car, whereas the agents testified that he stepped out without request. The agents did not request, nor did they take, appellant's car keys. Appellant consented to a search of his duffel bag after informing the agents that he had been in Florida for one week. A search of the duffel bag revealed handwritten notes resembling narcotics records and an airline ticket indicating that appellant's trip had lasted only three days, not one week. Based on this evidence Agent Magee performed a pat-down search of the appellant and discovered a package hidden below the appellant's waist. Agent Magee placed the appellant under arrest and asked him to remove the hidden package. Appellant complied and handed Agent Magee a bag of white powder which was subsequently determined to be a substance containing cocaine.

On February 19, 1987, a federal grand jury indicted appellant on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).

On March 30, 1987, appellant filed a motion to suppress the evidence seized at the airport at the time of the arrest. The district court conducted an evidentiary hearing on this motion and subsequently issued a Memorandum Opinion and Order on June 9, 1987, denying appellant's motion.

On June 19, 1987, appellant withdrew his plea of not guilty and entered a plea of guilty while retaining his right to appeal the district court's denial of his motion to suppress the evidence seized at the airport. Appellant was sentenced to eighteen months in prison, to be followed by a special parole term of three years. The district court entered the Judgment and Commitment Order.

On August 24, 1988, this court vacated and remanded the district court's Memorandum Opinion and Order denying the appellant's motion to suppress evidence 856 F.2d 197. This court found the district court's opinion ambiguous regarding whether a seizure had taken place and instructed the district court on remand to consider whether the DEA agents' conduct of stopping the appellant amounted to a seizure of the appellant. This court further instructed that if a seizure occurred, the district court was to consider next whether the seizure was constitutionally permissible.

On December 8, 1988, the district court issued its Memorandum Opinion and Order again denying appellant's motion to suppress the evidence. The district court determined that no seizure had occurred because a reasonable person in the appellant's position would have realized that he was free to leave prior to the search of his duffel bag. To the extent that Agent Magee's conduct could be construed as a seizure, the district court further held that Agent Magee had a reasonable and articulable suspicion to seize the appellant. The seizure, therefore, was constitutionally permissible.

This timely appeal followed.

## II.

### A.

Appellant argues that the district court erred in concluding that he was not seized within the meaning of the fourth amendment.

■ Any assessment as to whether police conduct amounts to a seizure implicating the fourth amendment must take into account "all the circumstances surrounding the incident" in each individual case. *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *United States v. Mendenhall*, 446 U.S. 544,

554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Stewart, J.)). In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 19, 88 S.Ct. at 1878.

In determining whether a person has been seized within the meaning of the fourth amendment, the Supreme Court set forth a test which provides that the police can be said to have seized an individual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877 (quoted in *United States v. Knox,* 839 F.2d 285, 289 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989)).

■ What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary with the police conduct at issue and the setting in which the conduct occurred. *Chesternut,* 108 S.Ct. at 1979. This test, while flexible enough to be applied to a wide range of police conduct, requires consistent application to every police encounter regardless of the particular individual's response to the policemen's actions. This "reasonable person" standard further ensures that the scope of the fourth amendment protection does not vary with the state of mind of the particular individual involved. *Id.* at 1980. The subjective intent of the officers is relevant to an assessment of the fourth amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted. *Mendenhall,* 446 U.S. at 554 n. 6, 100 S.Ct. at 1877 n. 6.

The Supreme Court has held that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions...." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The Court continued: "Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Id.* (citing *Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1877).

■ In the instant action, appellant voluntarily stopped his automobile after DEA Agent Magee displayed identification. Agent Magee was dressed in civilian clothing and did not display a weapon. Magee merely asked the appellant if he would answer some questions. The agent did not possess the appellant's identification, tickets, car keys or other personal property.

Similarly, after the appellant consented to the agent's request to converse, Agent Magee requested that the appellant turn off his automobile because its loud muffler made conversation difficult. Appellant was free to deny this request. Nevertheless, appellant chose to comply and turned off his engine. Agent Magee did not take the appellant's keys. Appellant subsequently consented to the search of his duffel bag wherein Agent Magee discovered evidence contradicting the appellant's previous statements, thereby elevating the agent's suspicion to probable cause. A patdown search of the appellant was conducted based on the probable cause and resulted in the discovery of drugs.[1]

■ The appellant does not deny that he consented to the search of his duffel bag. Such consensual conduct may not be deemed a seizure.

It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *"per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." It is equally well settled that one

---

1. *Conflicting testimony exists as to whether appellant consented to the pat-down search. Although Agent Magee testified that appellant con-* sented to the pat-down search (Magee Tr. 17), the appellant maintains that he, in fact, did not consent. (Rose Tr. 22–25).

of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973) (citations omitted).

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2047–48. "The district court's findings with regard to voluntariness will not be reversed unless clearly erroneous." *United States v. Jones,* 846 F.2d 358, 360 (6th Cir.1988) (per curiam).

[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted). The district court in the instant action determined that appellant's consent to converse, and to having his duffel bag searched, were made voluntarily. This court concludes that the district court's finding is not clearly erroneous.

Although superficially similar to the facts presented in *Royer,* Agent Magee's stop of the appellant, Rose, differs significantly from the unconstitutional detention of Royer. In *Royer,* the narcotics officers retained Royer's airline ticket and driver's license and requested that Royer accompany them to a small police room. The narcotics officers also retrieved Royer's checked luggage from the airline without his consent. No similar facts exist in the instant action. Appellant, Rose, retained both his airline ticket and automobile keys, and was questioned in an open, nonthreatening environment.

As the Supreme Court noted in *Royer,* "[H]ad Royer consented to a search on the spot, the search could have been conducted with Royer present in the area where the bags were retrieved by Detective Johnson and any evidence recovered would have been admissible against him." *Florida v. Royer,* 460 U.S. at 505, 103 S.Ct. at 1328. The Sixth Circuit has held similarly: "Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, Agent Anderson's quest for additional identification and voluntarily given information from the defendant does not constitute a seizure under the fourth amendment." *United States v. Collis,* 766 F.2d 219, 221 (6th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985).

The facts in the instant case indicate that Agents Magee and Johnston identified themselves as DEA agents and asked the appellant, Rose, if he would answer some questions. Rose agreed to this request though he was free to deny the request. Rose subsequently consented to the search of his duffel bag. Documents found in the duffel bag elevated Agent Magee's suspicion to probable cause thereby allowing a patdown search. This court has previously held that drug enforcement agents have probable cause to conduct pat-down searches of suspected drug carriers when documents suggesting a drug transaction are found in the suspect's possession and evidence discovered by the agents contradicts statements made by the suspect:

What followed the initial contact ... gave the drug enforcement agents positive knowledge that appellant had lied in denying his arrival by the Delta morning flight from Fort Lauderdale. The ticket in the briefcase confirmed his first class status which previously had been an educated surmise. The numbers on the Delta stationery corresponded with the agents' knowledge of the price of cocaine in Florida.

In short, by the time appellant refused to permit a search of his person, the facts require us to hold that the agents had evidence which constituted probable cause to believe that appellant was carrying drugs.

*United States v. Moore*, 675 F.2d 802, 808 (6th Cir.1982), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983).

Because a reasonable person in the appellant's position would have realized that he was free to leave prior to the search of his duffel bag, the district court's finding that no seizure occurred is not clearly erroneous.[2]

### B.

Appellant next argues that the DEA agents lacked a reasonable suspicion of criminal activity needed to justify the investigative stop of appellant's vehicle.

The Supreme Court has held that a policeman may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. *United States v. Sokolow*, — U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry v. Ohio*, 392 U.S. at 30, 88 S.Ct. at 1884).

When evaluating the validity of a stop, the totality of the circumstances must be considered. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although factors observed by DEA agents may individually appear harmless and consistent with innocent travel, taken

together they may amount to reasonable suspicion. *Sokolow*, 109 S.Ct. at 1586. The Supreme Court noted in *Sokolow*:

"[I]nnocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.

*Id.* at 1587 (citations omitted).

■ The Court further held that factors consistent with a "drug courier profile" do not detract from these factors' evidentiary significance:

We do not agree with respondent that our analysis is somehow changed by the agents' belief that his behavior was consistent with one of the DEA's "drug courier profiles." A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a "profile" does not somehow detract from their evidentiary significance as seen by a trained agent.

*Id.* Chief Justice Rehnquist, author of the *Sokolow* majority opinion, further indicated that the reasonableness of an agent's decision to make an investigative stop of a suspect does not turn on the availability of less intrusive investigatory techniques:

Respondent also contends that the agents were obligated to use the least intrusive means available to verify or dispel their suspicions that he was smuggling narcotics. In respondent's view, the agents should have simply approached and spoken with him, rather than forcibly detaining him.... The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly

---

**2.** This finding is supported by the Ninth Circuit's recent holding in *United States v. Low*, 887

F.2d 232 (9th Cir.1989).

hamper the police's ability to make swift on-the-spot decisions.... The seizure in this instance amounted to nothing more than an investigatory stop.

*Id.* (citations omitted).

The Court's holding in *Sokolow* rejects the two-pronged test previously used for evaluating investigative stops of suspected drug couriers:

The rule enunciated by the [Ninth Circuit] Court of Appeals, in which evidence available to an officer is divided into evidence of "ongoing criminal behavior," on the one hand, and "probabilistic" evidence, on the other, is not in keeping with the quoted statements from our decisions. It also seems to us to draw a sharp line between types of evidence, the probative value of which varies only in degree.

*Id.* at 1586. Although the district court in the instant action applied this recently disfavored two-pronged test to the appellant, Rose, we nevertheless hold that the district court's determination remains valid. Because *Sokolow* combines the elements of the two prongs, holding that reasonable suspicion must be evaluated by all the relevant factors taken together, any error to the appellant would be harmless because all the relevant factors considered together indicate grounds for a reasonable suspicion of criminal activity.

Agent Magee testified that he observed the appellant deplane a direct flight from Miami, a "drug-source" city, carrying only a duffel bag. Appellant walked rapidly, and nervously, through the terminal stopping only to make several hurried phone calls. Appellant then rapidly departed the airline terminal and proceeded to his automobile which was parked in the short-term parking lot. The district court determined that Agent Magee's observations would lead a trained police officer to believe that the particular conduct of the appellant, when considered in conjunction with the objective evidence, indicated that the appellant was participating in illegal drug trafficking. We do not find this determination to be clearly erroneous. This court therefore finds that Agent Magee

had a reasonable and articulable suspicion to briefly detain the appellant for investigative purposes.

For the foregoing reasons, the district court's Amended Judgment and Commitment Order, denying appellant's Motion to Suppress Evidence, is AFFIRMED.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I have closely read this record and I agree with Judge Contie's analysis as applied to the facts in this case.

I am, however, mindful of the admonition in the dissent in the recent railway employee drug testing decision of the United States Supreme Court:

The issue in this case is not whether declaring a war on illegal drugs is good public policy. The importance of ridding our society of such drugs is, by now, apparent to all. Rather, the issue here is whether the Government's deployment in that war of a particularly draconian weapon—[here, the unwarranted and unsupported stopping and searching of apparently law-abiding citizens on the basis of mere speculation and conjecture]— comports with the Fourth Amendment. Precisely because the need for action against the drug scourge is manifest, the need for vigilance against unconstitutional excess is great. History teaches that grave threats to liberty often come in times of urgency, when constitutional rights seem too extravagent to endure. The World War II relocation-camp cases, and the Red Scare and McCarthy–Era internal subversion cases, are only the most extreme reminders that when we allow fundamental freedoms to be sacrificed in the name of real or perceived exigency, we invariably come to regret it.

*Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. ——, ——, 109 S.Ct. 1402, 1422, 103 L.Ed.2d 639, 671 (1989) (citations omitted).

The *Skinner* majority noted that:

the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. What is reasonable, of course, "depends on all

the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Thus the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."

*Id.*, 489 U.S. at ——, 109 S.Ct. at 1414, 103 L.Ed.2d at 661 (citations omitted).

The obvious necessity for police interdiction of drug couriers and traffickers does not outweigh the constitutional standards for police intrusion into the affairs of ordinary citizens—be they within their homes or deplaning a flight from Miami. The oral argument of the U.S. Attorney in this case, that the defendant must have satisfied the drug courier profile because when the defendant was searched, the officers discovered drugs, is a stark example of the need for the courts to ensure that the law enforcement agencies in this country adhere to constitutional requirements in their zeal to combat the drug problem that plagues this nation.