952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard BYROM, Defendant-Appellant.
 No. 91-5669.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 This is an airport search and seizure case involving illegal drugs found in checked luggage. Byrom was charged with unlawful possession of cocaine and methamphetamine, with the intent to distribute. Byrom moved to suppress all evidence obtained pursuant to a search and seizure of his person at the Nashville Airport. After a hearing, the motion was denied and Byrom entered a conditional plea of guilty pursuant to Rule 11(a)(2), Fed.R.Crim.P., so as to preserve for appeal the denial of the motion to suppress. Byrom was sentenced to ten years in prison and five years of supervised release. Byrom now appeals. We affirm.
 
 
 2
 * On January 24, 1990, four officers of the Nashville International Interdiction Airport Unit (IAU) conducted surveillance of passengers arriving on a flight that originated in Los Angeles and stopped in Phoenix before arriving in Nashville. The IAU is a Drug Enforcement Administration (DEA) task force composed of airport security and local police officers. Supervised and trained by the DEA, the IAU is responsible for monitoring air traffic from "source cities" known for drug trafficking, such as Dallas, Houston, Phoenix, Los Angeles, Miami, and Detroit.
 
 
 3
 Two officers, Gillespie and Perry, were watching a group of 50-60 passengers disembark. Their attention was drawn to the defendant and a companion, later identified as Jones. Officer Gillespie noted that the two passengers "were walking close to each other, like they were together but not together," while Officer Perry stated that the defendant was "walking hesitantly, meekish, he was glancing side to side, he seemed to be walking with another individual, but I could see no words being spoken ... they walked as though they were together but not together."
 
 
 4
 For these reasons, the officers followed Byrom and Jones into a snack bar area and seated themselves on the opposite side of the room from the defendant. Byrom and Jones then met a third person, later identified as Dunn, who was already in the snack bar. Jones and Dunn sat together, while Byrom sat by himself two tables away. Jones left shortly and Byrom then joined Dunn for about five minutes. While in the snack bar, Officer Gillespie intentionally stared at Byrom, a technique Gillespie has been taught. Defendant claims that this staring was designed to make him feel intimidated and nervous.
 
 
 5
 When Byrom left the snack bar by himself, the officers followed him. As Byrom headed toward the main terminal to leave the airport, he discarded two objects in two separate trash cans. Officer Gillespie stopped to search the two trash cans, but found nothing. Officer Perry continued to follow Byrom and when he left the airport security area, Officer Perry approached Byrom "for the purpose of making contact." Perry showed Byrom his badge and asked if he could speak with him. Byrom said yes. Byrom accompanied Officer Perry to a nearby lounge for more privacy. In the lounge, Byrom and Officer Perry sat at a table and were joined by Officer Gillespie. The officers asked to see Byrom's airline ticket and driver's license and Byrom complied.
 
 
 6
 Upon finding that Byrom was a California resident and noting that there was no baggage claim ticket, but that there was a hole where a staple had been, the items were immediately returned to the defendant. Upon being repeatedly asked, Byrom repeatedly denied having checked any luggage. After Byrom consented to a search of his person and carry-on bag, the officers found no drugs, but also found no clothes in the bag, despite the fact that Byrom had told them he was coming to Nashville to visit a friend. Suspicious, the officers again asked Byrom if he had checked any luggage, and again he denied that he had.
 
 
 7
 During this encounter, Byrom was never advised of his right to walk away. Defendant states that he has dyslexia, which makes him feel unequal to others and submissive to authority figures. He also states that he has "passive/submissive personality characteristics." After he was searched, Byrom asked if he could leave. He was told that he could, and he then immediately left the airport without going to the luggage claim area. At the unclaimed luggage area, the officers found a suitcase, identified with Byrom's name and California address. It had a baggage claim check whose flight number matched that of the flight on which Byrom had just arrived. The officers opened the suitcase and found it not only full of clothing, but also found a "hard and bulky" substance which was identified as methamphetamine and cocaine. A search was immediately taken of the Nashville airport, but Byrom was not found and he was never seen again in the Nashville International Airport.
 
 
 8
 The district court stated that it was "not sure they [the police] had a reasonable basis to make the search." It then held, however, that this was merely a police-citizen encounter and not an unconstitutional seizure. The court also held that it was clear that Byrom abandoned his luggage and that after such abandonment, the DEA has a perfect right to open luggage without a warrant.
 
 II
 
 9
 * The district court found that the encounter between Byrom and the IAU officers was a constitutional police-citizen encounter and that the ensuing search of Byrom was consensual. Byrom claims that the encounter was a seizure in violation of the fourth amendment.
 
 
 10
 In airport search cases, there are three basic types of contact that can occur between police officers and the travelling public. United States v. Flowers, 909 F.2d 145, 147 (6th Cir.1990). The first is contact initiated by a police officer without any articulable reason whatsoever, known as a police-citizen encounter. Law enforcement officers do not violate the fourth amendment merely by approaching an individual in some public place, and obtaining the citizen's consent to ask questions. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983). Nor would the mere act of an officer identifying herself transform a police-citizen encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877 (1980).
 
 
 11
 The second type of contact is the classic Terry stop, based upon "reasonable suspicion." According to United States v. Flowers, "[t]he temporary detention of a person meeting the drug courier profile would be an example of this type of police citizen contact, which, although constituting a seizure, would not offend the Fourth Amendment." United States v. Flowers, 909 F.2d at 147. The third type of contact, seldom found in an initial airport contact, is when officers have probable cause to believe a crime has been committed and that the person stopped committed it. Ibid.
 
 
 12
 The district court held that this was a permissible police-citizen encounter, while Byrom claims that this was a Terry -type seizure that violated his fourth amendment rights because the officers lacked "reasonable suspicion" to stop him. The test for determining whether a seizure has occurred is "whether, under the totality of the circumstances, a reasonable person would have believed he or she was not free to walk away." United States v. Mendenhall, 446 U.S. at 554-55, 100 S.Ct. at 1877. Examples of circumstances that might indicate a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Ibid.
 
 
 13
 Whether a contact between a police officer and a citizen constitutes a seizure or is merely a consensual police-citizen encounter depends on the relevant facts of the particular case. See United States v. Jefferson, 650 F.2d 854, 857 (6th Cir.1981). The voluntariness of the encounter is to be determined by the totality of all the circumstances. United States v. Mendenhall, 446 U.S. at 557, 100 S.Ct. at 1879. Such cases generally "turn largely on credibility determinations made by the district judge at the suppression hearing." United States v. Cooke, 915 F.2d 250, 252 (6th Cir.1990).
 
 
 14
 In cases involving airport encounters, the request for and examination of a citizen's airline ticket and driver's license has generally not been found to constitute a seizure. See United States v. Cooke, 915 F.2d 250 (6th Cir.1990); United States v. Winfrey, 915 F.2d 212 (6th Cir.1990), cert. denied, 111 S.Ct. 709 (1991). The government argues that no other factors or circumstances exist that could classify this encounter as a seizure. The officers identified themselves, were not dressed in uniform and never displayed any weapon. Byrom was not removed to a security office where he might feel constrained. He willingly produced his airline ticket and driver's license, which were immediately returned to him, and he willingly consented to a search of his carry-on bag, his jacket and his person.
 
 
 15
 The defendant argues that this encounter was a seizure because the contact between the officers was not initiated when they approached Byrom, but rather when Officer Gillespie intentionally stared at Byrom while he was sitting in the snack bar. Defendant claims this was an intimidation technique, which was designed to make Byrom "do something." Because Byrom is dyslexic and consequently submissive to authority figures, he argues that he was uniquely susceptible to such subtle forms of threatening psychological intimidation. However, the standard of whether an encounter constitutes a seizure is a reasonable person standard. See United States v. Cooke, 915 F.2d 250, 252 (6th Cir.1990), citing Michigan v. Chesternut, 486 U.S. 567, 574 (1988).
 
 
 16
 To overcome the lack of factors typically listed as constituting a seizure, the defendant's argument focuses on the officers' subjective intent; the officers' use of allegedly threatening language, manner, and tone of voice; and the officers' allegedly coercive conduct. All that the defendant presents to support these assertions is the contention that the officers were really interested in the luggage and not in Byrom and the fact that Officer Gillespie stared at Byrom in an intimidating fashion. However, staring at a citizen does not transform the encounter into an illegal seizure.
 
 
 17
 Indeed, the district court refused to find coercion of any type and "credit[ed] the testimony of Officers Perry and Gillespie in all respects ... [and stated that] the officers were telling the truth...." J.A. at 171.
 
 
 18
 "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Scheneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "The district court's findings with regard to voluntariness will not be reversed unless clearly erroneous." United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988) (per curiam).
 
 
 19
 United States v. Rose, 889 F.2d 1490, 1493 (6th Cir.1989). Viewing the totality of all the circumstances under the "reasonable person" standard, the district court's finding that the police officers did not coerce Byrom is not clearly erroneous. Byrom's reliance on the officers' subjective intent to prove coercion is unpersuasive. "The subjective intent of the officers is relevant to an assessment of the fourth amendment implications of police conduct only to the extent that intent has been conveyed to the person confronted." United States v. Rose, 889 F.2d at 1493, citing United States v. Mendenhall, 446 U.S. at 554 n. 6. Even, if Byrom's claims about the officers' subjective intent were accurate, the record does not show that Gillespie and Perry conveyed such intentions to Byrom.
 
 B
 
 20
 Abel v. United States, 362 U.S. 217, 80 S.Ct. 683 (1960), establishes the principle that a warrantless search and seizure of abandoned property does not violate the fourth amendment. By voluntarily abandoning property, a person forfeits any reasonable expectation of privacy in the property. The question is whether or not the person claiming protection of the fourth amendment has a legitimate expectation of privacy in the invaded object. United States v. Tolbert, 692 F.2d 1041, 1043 (6th Cir.1982), cert. denied, 464 U.S. 933 (1983); United States v. Lucci, 758 F.2d 153, 155 (6th Cir.), cert. denied, 474 U.S. 843 (1985). Defendant argues that he did not abandon his luggage or relinquish his fourth amendment privacy rights by virtue of his verbal disclaimer to the IAU officers that he did not have any checked luggage.
 
 
 21
 The question of abandonment is a mixed question of law and fact. The district court's resolution of such a question is entitled to great deference as far as its factual aspect is concerned. United States v. Oswald, 783 F.2d 663, 666, (6th Cir.1986). Privacy expectations vary with the location of the property and when luggage is left in an airport baggage claim area, it is reasonable to expect some measure of security. Id. at 667.
 
 
 22
 However, the legitimate expectation of privacy incorporates two elements: 1) whether an individual's conduct has exhibited such an expectation and 2) whether the individual's subjective expectation of privacy is "one that society is prepared to accept as 'reasonable' " or justified under the circumstances. United States v. Tolbert, 692 F.2d at 1044.
 
 
 23
 The defendant maintains that his mere denial that he had any luggage was not an action indicating that he intended to abandon his luggage. It has been established that failure to claim one's luggage immediately at the airport does not in itself establish abandonment. Ibid. However, the Tolbert court held that such action combined with "vigorous oral disclaimers" indicated that defendant had no legitimate expectation of a privacy interest in the luggage and that abandonment had occurred. Ibid.
 
 
 24
 Defendant argues that we should look to United States v. Jackson, 544 F.2d 407 (9th Cir.1976) where the court held that the defendant's acts alone, which consisted of dropping the suitcase he was carrying and walking a few steps away from it as he was approached by narcotics officers, did not constitute abandonment of his rights in the suitcase. Byrom argues, that similarly, his statement of denial alone, which was not even an action, should not constitute abandonment and that more affirmative action was required on the part of the defendant to demonstrate his intent to abandon the luggage. However, in the Jackson case, the emphasis was on the act of dropping the bag alone, and did not take into account evidence of the defendant's verbal denial of a property interest, which the court found to be tainted because it was given after an arrest that was held illegal. Here, the initial contact was not illegal, but rather was a consensual police-citizen encounter. Further, Byrom's conduct in leaving the airport without the luggage was an action that confirmed his verbal disclaimers.
 
 
 25
 Similarly, defendant's reliance on United States v. Morin, 665 F.2d 765 (5th Cir.1982), for the principle that abandonment, like consent, must be freely accomplished is misplaced. There, abandonment was found tainted by an illegal seizure based on the key fact that the defendant was successively stopped twice at two different airports on the basis of the same information that justified the first stop. The Morin court held that such successive stops based on the same information strongly indicate a finding that an arrest had been made and in this case that the arrest lacked probable cause. Successive stops is not an issue in this case. Defendant's attempt to apply the exclusionary rule depends on the illegality of the search and none of the cases provided demonstrate that the police contact constituted an illegal seizure.
 
 
 26
 We AFFIRM the district court's denial of the defendant's motion to suppress evidence. The initial contact between defendant and police was a permissible police-citizen encounter and the luggage was correctly found to have been abandoned.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation