In re AMDURA CORPORATION; Amdura National Distribution Company, f.k.a. Fok Coastamerica Corporation; Coast To Coast Holdings, Inc.; Coast To Coast Stores, Inc.; and Intertrade Cargo, Inc.; Debtors.

AMDURA CORPORATION, Plaintiff,

v.

RYDER TRUCK RENTAL, INC., Defendant.

Bankruptcy Nos. 90 B 03811 E, to 90 B 03816 E.
Adv. No. 92–1459 PAC.

United States Bankruptcy Court, D. Colorado.

March 9, 1993.

Morris B. Hecox, Craig B. Shaffer, David W. Furgason, Welborn Dufford Brown & Tooley, P.C., Denver, CO, for plaintiff.

Christian C. Onsager, Wayne A. Shammel, Faegre & Benson, Denver, CO, for defendant.

ORDER ON MOTION TO DISMISS [1]

PATRICIA A. CLARK, Bankruptcy Judge.

The matter before the Court is the motion to dismiss the above-captioned case made by Ryder Truck Rental, Inc. (Ryder) at the close of plaintiff's case-in-chief to recover an alleged preferential transfer. Ryder alleges that Amdura Corporation (Amdura) failed to meet the burden of proof to sustain a verdict for Amdura.

The parties stipulated to the Court's jurisdiction and Amdura's authority to prosecute avoidance actions.

The relevant facts were either presented by stipulation or through the evidence at trial. On March 28, 1990, a wire-transfer was made by Amdura to Ryder in the amount of $153,022.89. The $153,022.89 constituted a transfer of an interest in Amdura's property. The $153,022.89 obli-

1. Effectively, the request is for a directed ver- dict pursuant to Fed.R.Civ.P. 50(a).

gation arose from Ryder's rental and service of trucks for Amdura National Distribution Co. (ANDCO), a subsidiary of Amdura. ANDCO and Ryder were parties to certain truck leasing and service agreements for ANDCO's Globe Distribution business. This wire transfer was the only wire transfer from Amdura to Ryder in the year prior to Amdura's bankruptcy filing. It was made only after Ryder threatened to withdraw the leased trucks.

The parties stipulated to the following regarding Ryder's status as a creditor. Ryder was not a creditor of Amdura and was not listed as a creditor on Amdura's Chapter 11 schedules. Ryder was a creditor of ANDCO and filed a proof of claim for $67,346.74 for amounts due under the leases and the claim was allowed in ANDCO's Chapter 11 case.

Amdura filed a proof of claim against ANDCO in the amount of $101,813,612. ANDCO did not file a proof of claim against Amdura.

ANDCO had two types of bank or lockbox accounts. In one account it received money which was transferred by wire daily to Amdura's intercompany "cash concentration" account. The other account was called a disbursement account from which ANDCO wrote checks. Allegedly, at the end of the day the bank where the disbursement account was kept would report to Amdura the amount of checks presented for payment on that day, and Amdura's bank would wire transfer funds to the bank to cover those checks. Amdura also made certain overhead charges to ANDCO which were passed through the inter-company account. Amdura ceased fully funding the disbursement account on January 22, 1990, leaving ANDCO without money to pay all of its bills. Amdura did not have any written contractual obligation to fund the disbursement account.

The account balance for the inter-company account was not computed daily. In September of 1989, according to the testimony of Mr. Larson, president and chief financial officer of ANDCO, the account balances showed that Amdura owed money to ANDCO.[2] However, in late December of 1989, Coast to Coast Stores, Inc., sold Globe Distribution to ANDCO (the actual transfer took place in July of 1989). The transaction was allegedly listed on the books in Amdura's favor for $45 million and charged through the inter-company account to ANDCO. Between December 31, 1989 and March 28, 1990, ANDCO did not upstream $45 million to Amdura through the intercompany account or otherwise.

Ryder asserts that the case should be dismissed because Amdura failed to present evidence that on the date of the transfer, March 28, 1990, ANDCO was a creditor of Amdura. This is a critical element of Amdura's case under 11 U.S.C. § 547(b) and since the burden of proof is on the plaintiff, the failure to meet the burden justifies dismissal. Ryder maintains that based upon the Globe transaction ANDCO was a net-debtor[3] to Amdura, not a creditor, and that it did not have any claim or right to payment from Amdura. Moreover, because there is no evidence of the exact intercompany balance on March 28, 1990, it is impossible to determine whether the payment made to Ryder was on account of an antecedent debt owed by Amdura to ANDCO.

In response to the motion to dismiss, Amdura argued that the evidence did show that ANDCO was a creditor of Amdura. It noted that the terms "creditor" and "claim" are to be interpreted broadly. Under such a broad interpretation, the provisionally admitted testimony that ANDCO contributed far more to the cash concentra-

---

**2.** Amdura did not bring or offer the books and records into evidence. Ryder raised a hearsay objection to any testimony relating to the contents of the books and records. The Court conditionally overruled the objection to allow the testimony to be given and to provide Ryder with an opportunity to review the books and records at a later date if Ryder believed it was necessary.

**3.** The term net-debtor was used by Ryder to refer to the position held by a party who is both a debtor and a creditor of a second party, but when the claims are offset, the first party still owes money to the second.

tion account than it drew back from Amdura was sufficient to prove that ANDCO was a creditor with a claim against Amdura. Amdura cites the case of *Ray v. City Bank & Trust Co., (In re C–L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990), in support of its position that ANDCO was a creditor of Amdura.

■ Section 547(g) places the burden of proving the avoidability of a transfer under Section 547(b) on Amdura. For the purpose of ANDCO's motion there are two relevant provisions out of the five enumerated under Section 547(b)[4] which Amdura must prove. In order to survive the motion to dismiss, Amdura must prove that the transfer of the debtor's interest in property was to or for the benefit of a creditor; for or on account of an antecedent debt owed by the debtor before such transfer was made.

In a recent Tenth Circuit decision, *Perma Pacific Properties v. Winn (In re Perma Pacific)*, 983 F.2d 964 (10th Cir.1992), the court reviewed cases which discussed the terms "debt", "antecedent debt" and "claim". It relied upon those cases which found that Congress intended for those terms to be construed "broadly and expansively". *Id.* In addition, it noted "that the terms 'debt' and 'claim' are coextensive: a creditor has a claim against the debtor; the debtor owes a debt to the creditor." *Id.* citing *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990).

This Court examined the issue of intercompany transfers in *Miniscribe Corp. v. Nashua Computer Products Corp. (In re Miniscribe Corp.)*, Adv. No. 90 1458 PAC, slip op. (Bankr.D.Colo. May 2, 1991). There a motion for summary judgment was denied in part because there was no evidence on the intercompany account balances to show whether Miniscribe was a debtor of its subsidiary's subsidiary during the dates the preferential transfers occurred. Thus, the Court could not determine whether the transfer was for or on account of antecedent debt.

The Court is not persuaded that the case cited by Amdura, *C–L Cartage Co.*, 889 F.2d 1490, is apposite. In *C–L Cartage Co.* the debtor's president and his mother obtained loans from a bank and transferred the proceeds of the loans to the debtor. The trustee sought to recover payments made by the debtor to the bank on those loans. The court found that the president and his mother did not receive promissory notes from the debtor, and consequently they only had an expectation that the debtor would pay the bank. The court affirmed the holding that the expectation of payment was sufficient to classify the president and his mother as creditors.

■ Unlike the case at hand, the court in *C–L Cartage Co.* was not required to consider any evidence relating to intercompany account balances to show that the president and his mother were creditors and that the payment was on account of an antecedent debt owed to them on the date of the preferential transfers. There was no mention that they owed the debtor any money. Conversely in this case, ANDCO's daily proceeds went into the intercompany account which allegedly reflected that ANDCO was a debtor for many millions of dollars due to the purchase of Globe Distribution. Based upon the significantly greater amount ANDCO owed Amdura over what allegedly was swept into the

---

**4.** Subject to certain defenses, Section 547(b) allows the trustee to avoid any transfer of the debtor's interest in property. To be avoidable the transfer must have been:

  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made—
    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
  (5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

intercompany account, ANDCO's expectation of payment by Amdura of ANDCO's bills[5] did not automatically make ANDCO a creditor of Amdura on account of an antecedent debt for the purposes of Section 547(b)(1) and (2).

The Court has reviewed the evidence and finds that Amdura failed to prove that the transfer to Ryder was for or on account of an antecedent debt due from Amdura to ANDCO. There was insufficient evidence on the exact status of the intercompany account to determine whether ANDCO was a net-debtor or a creditor on the account on the date of the preferential transfer. Furthermore, based upon the disclosure statements of Amdura and ANDCO, Amdura's proof of claim against ANDCO and testimony regarding the extent of the debt on the Globe Distribution transaction which was recorded in the intercompany account, it appears that ANDCO was not a creditor of Amdura. Amdura did not prove that ANDCO had a claim against Amdura for payment at the time the transfer occurred. Thus, the motion to dismiss must be granted as there is not a legally sufficient evidentiary basis for the court to rule that Amdura's satisfied the requirements of Section 547(b)(1) and (2).

ORDERED that Ryder's motion to dismiss is granted and this case is hereby dismissed.

FURTHER ORDERED that on or before March 31, 1993, the case shall be closed.

---

5. It is questionable whether any expectation of payment remained since January 22, 1990, when the complete funding of the disbursement accounts was terminated.