989 F.2d 501
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James R. JONES, Defendant-Appellant.
 No. 92-5726.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1993.
 
 Before DAVID A. NELSON and BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, James R. Jones, appeals his jury conviction for possession and transportation of stolen property and credit card fraud. Defendant contends that the district court erred in failing to suppress the evidence from three searches that were made in the course of investigating this case. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On May 16, 1991, officer James Underwood of the Metropolitan Police Department received a call on his radio to go to Dodge Cleaners concerning a suspicious individual who was in the parking lot. Officer Underwood went to the cleaners and spoke with the person who had complained, Christi Kimbro, an employee who worked at the cleaners. She told Officer Underwood that there was a man sitting in the parking lot waiting for her to get off work and that she was afraid of him. She stated that she had had an argument with the man and that she was afraid he was going to do bodily harm to her. She stated that he was known to carry a weapon. Miss Kimbro then pointed to defendant, who was sitting in a car in the parking lot.
 
 
 3
 After speaking with Miss Kimbro, Officer Underwood went outside into the parking lot and asked defendant to get out of the car. He complied. Officer Underwood told defendant that someone had called about him sitting in the car, "being suspicious," and then proceeded to conduct a patdown search, but found no weapons.
 
 
 4
 Officer Underwood stated at the suppression hearing that for his own protection he wished to determine if there was a weapon in the car and asked defendant if he could search the car. Officer Underwood testified that defendant agreed to the search. Christi Kimbro, on the other hand, testified at the suppression hearing that when she looked out of the window, she saw about twenty policemen and that it appeared to her that defendant was attempting to resist their search of the car. She stated that he was twisting and turning and looked as if he were resisting, "shaking his head like that, no...." Miss Kimbro testified that in her opinion he did not seem to want them to search his vehicle and seemed to be arguing with the officers.
 
 
 5
 On the floorboard of the back seat of the car, Officer Underwood found a small carry-on bag which contained a small quantity of marijuana, a package of jewelry, and a quantity of bullets. Officer Underwood testified that he then asked defendant if he could search the trunk of the car and that defendant consented. Inside the trunk, Officer Underwood found a paper sack containing $44,500.00 in currency.
 
 
 6
 After the money was found, Officer Underwood determined that there was an outstanding warrant for defendant for violating his probation and placed him under arrest. Defendant's car was then towed to the police station.
 
 
 7
 In the meantime, agent Mike Keen of the Secret Service heard the radio traffic report of James R. Jones' arrest. He advised the officers that defendant Jones was known to be in possession of a credit card belonging to Mr. Detwiller, the victim of a large residential burglary. A search warrant for the car was obtained and the car was later searched again. A search warrant was also obtained to search for stolen property at a storage bin registered in the name of James R. Jones.
 
 
 8
 On July 17, 1991, a four-count indictment was returned by a federal grand jury for the middle district of Tennessee charging defendant with credit card fraud, interstate transportation of stolen property, and possession of stolen property. On January 14, 1992, defendant filed a motion to suppress the evidence seized by the police officers from his car and from the storage bin. Following a hearing, the motion to suppress was denied by the district court in its entirety. Defendant was then convicted by a jury on all four counts of the indictment and sentenced to a term of 71 months incarceration. Defendant timely filed this appeal.
 
 II.
 
 9
 Defendant first contends that the evidence seized from his car, the jewelry and the bag of money,[1] must be suppressed because he never gave consent to search the car and the officers had no other reason to search the car. The government contends that Officer Underwood had reasonable suspicion to search defendant for a weapon and that following a pat-down search, defendant gave his consent to search the car.
 
 
 10
 At the suppression hearing, Officer Underwood testified that after being advised by Miss Kimbro that defendant was known to carry a weapon, he went out to the car and patted him down for the weapon. Officer Underwood testified that there were four or five officers present, and that defendant gave his consent for the car to be searched. Miss Kimbro, on the other hand, testified that there were about 20 officers present and that in her perception, from her vantage point of looking out the window, it appeared to her that defendant was resisting the search of the car, because he was shaking his head, and he was twisting and turning.
 
 
 11
 The resolution of this issue depends on the credibility determination of the district court. The district court found that Officer Underwood's testimony was credible and discounted the testimony of Miss Kimbro. This court reviews the district court's determinations in this regard under a clearly erroneous standard. United States v. Winfrey, 915 F.2d 212, 218 (6th Cir.1990), cert. denied, 111 S.Ct. 709 (1991). United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989).
 
 
 12
 It cannot be said that the district court's determination was clearly erroneous. First, it is evident that the police had reasonable suspicion to stop and briefly detain defendant and conduct a pat-down search for weapons. Miss Kimbro had told Officer Underwood that she feared that defendant was going to harm her and that he often carried a weapon. At the suppression hearing, Miss Kimbro conceded that she told the police that previously she had seen defendant with a weapon. Therefore, the officer had reasonable suspicion to believe that defendant might be armed. In evaluating the validity of a Terry stop, the totality of the circumstances must be considered. United States v. Cortez, 449 U.S. 411, 418 (1981). The Fourth Amendment requires some minimal level of objective justification for making the initial stop. United States v. Sokolow, 490 U.S. 1, 7 (1989). In the present case, the officer had a reasonable suspicion supported by articulable facts that criminal activity "may be afoot" because Miss Kimbro stated that she had argued with defendant, that she was afraid that he was waiting for her to get off work to harm her, and that he was known to carry a weapon. The information the officer received from Ms. Kimbro has enough indicia of reliability to justify the stop of defendant and the request that defendant get out of his car so that a pat-down search could be conducted.
 
 
 13
 In regard to whether defendant consented to the search of his vehicle, a search pursuant to a valid consent is constitutionally permissible if it is voluntary. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Whether consent has been freely and voluntarily given is a question of fact that must be determined from the totality of the circumstances. Id. In the present case, the district court decided to credit the testimony of Officer Underwood over that of Ms. Kimbro. There seems to be a reasonable basis for this decision. Ms. Kimbro's statement that 20 officers were outside forcing defendant to allow them to search his car is not credible in the circumstances. The call was only for a complaint about a suspicious person. There was no indication that a robbery had occurred or that a weapon had been used, and there would be no reason for 20 police officers to appear at a dry cleaners to look at a suspicious person sitting in a car. Furthermore, Miss Kimbro conceded that she could not hear what defendant was saying.
 
 
 14
 Defendant argues that it is not credible that he gave consent because no one asked him to sign a consent form, there is no mention of his giving consent in the police report of the incident, or in the affidavits for the subsequent searches.
 
 
 15
 Defendant's arguments are to no avail. At the time Officer Underwood first obtained defendant's consent to search the vehicle, he was alone. The four or five other officers who arrived at the scene did not come until later. Officer Underwood had just received information that defendant was known to carry a weapon and the fact that he did not get a written consent does not mean that he did not obtain oral consent. Consent may be freely and voluntarily given either orally or in writing. The fact that Officer Underwood did not recite in his report that he had been given consent to search the car also does not mean that consent was not given. There is also no implication to be drawn that consent was not freely and voluntarily given from the fact that there was no report of consent in either of the search warrant affidavits made for the subsequent searches. Whether defendant consented to the search of his vehicle is not a critical factor for the purposes of the affidavits. For these reasons, we believe the district court's findings that defendant consented to the searches are not clearly erroneous. The district court is affirmed on this issue.
 
 III.
 
 16
 We must next decide whether the affidavit for the search warrant of defendant's car was sufficient to establish probable cause to search the car.
 
 
 17
 Defendant contends that the search warrant, which was obtained to search his car after it had been towed, relied in large part upon the fruits found during the warrantless search of his car while he was at the dry cleaning parking lot, i.e., the jewelry and $44,500. Defendant argues that since the evidence obtained as a result of that search must be suppressed, the evidence obtained by the further search made pursuant to the affidavit must also be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963). Because there was no unlawful search of defendant's car in the first place, the Wong Sun doctrine is not applicable in the present case. Therefore, the money and the jewelry which was used in the affidavit to establish probable cause was permissibly used for that purpose.
 
 
 18
 The affidavit at issue provided as follows:
 
 
 19
 On May 16, 1991, your affiant responded to a radio pickup put out on a 1987 Olds color blue which was occupied by M/W parked in the parking lot at 27 White Bridge Road. Officer J. Underwood identified the suspect as James R. Jones. On a search for a weapon, a bullet was found along with $45,000.00 in cash in two different ID's. The vehicle also contained several gold rings with stones. In hearing the radio traffic, agent Mike Keen of the Secret Service, advised James R. Jones was known to be in possession of a credit card belonging to Mr. Detwiller, the victim of a large residential burglary in the Belle Meade area, CPN 90-826158. Your affiant prays that this warrant be issued. From affiant's experience of 10 years as a police officer and 6 years as an investigator, affiant feels that this vehicle may contain additional above listed evidence in these related burglaries.
 
 
 20
 The search warrant was obtained by officer Clifford Douglas of the Metropolitan Police Department.
 
 
 21
 In reviewing an affidavit for a search warrant, a judicial officer is charged with the responsibility of making an independent determination of whether probable cause exists based upon the totality of the circumstances. Illinois v. Gates, 462 U.S. 213 (1983). As the Supreme Court has stated: search warrant affidavits are:
 
 
 22
 normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
 
 
 23
 United States v. Ventresca, 380 U.S. 102, 108 (1965). Courts should not invalidate the warrant by interpreting the affidavit in a "hypertechnical, rather than a common sense, manner" and should not undertake a de novo review of the sufficiency of an affidavit. Id. at 109. A reviewing court is only required to find that the issuing judge had a substantial basis for concluding that a search of the named location would uncover evidence of wrongdoing to sustain the validity of a search warrant. Illinois v. Gates, 462 U.S. at 236.
 
 
 24
 In the present case, the affidavit in support of the warrant for the search of the car stated that the affiant had responded to a radio pickup put out on defendant's car, that the suspect had been identified as the defendant, and that a search of defendant's car for a weapon had produced a large amount of cash, two identification cards, and jewelry. The affidavit also stated that Officer Douglas had been advised by Secret Service Agent Mike Keen that the defendant was known to be in possession of a stolen credit card taken during a burglary in the Belle Meade area. A reasonable inference from the information contained in the affidavit was that there was a fair probability that "papers, receipts, tools or instruments" used in burglaries would be found in defendant's car. Although the affidavit does not state how agent Mike Keen knew the defendant possessed a stolen credit card, the affidavit reveals that several rings and a large amount of cash were found in the car, and these are items that reasonably could have come from a burglary. A further search of the car was warranted in order to search for other items that could have come from burglaries. For these reasons, the affidavit established probable cause to support the issuance of the warrant for a search of the car.
 
 IV.
 
 25
 We must finally decide whether the district court correctly denied the defendant's motion to suppress evidence seized pursuant to a search warrant to search a storage bin.
 
 
 26
 Defendant contends that the search warrant obtained for the storage bin violates the Fourth Amendment because the search warrant was based in part upon the fruits of the warrantless search of the vehicle and the fruits of this search must be suppressed under Wong Sun.
 
 
 27
 As stated above, the search of the vehicle was valid and therefore the jewelry and the money found in the vehicle was justifiably used in the affidavit to provide evidence of probable cause for searching the storage bin.
 
 
 28
 Defendant also contends that the affidavit states that "your affiant has received information that some of the stolen property was being stored in the storage bin." Defendant contends that the basis for this information was not stated and therefore the warrant was deficient. Defendant contends that there was no other statement in the affidavit that would support a finding that the property sought was located in the storage bin.
 
 
 29
 We disagree. The affidavit in support of the warrant for search of the storage bin was sufficient despite the fact that it did not disclose the source of the information that the defendant was using a storage bin. The affidavit, which was made by Officer Todd Jordan of the Belle Meade Police Department, related the facts of Officer Jordon's investigation into two burglaries which had been committed some months earlier in the Belle Meade area of Davidson County, including the facts that, using information from an informant, the police had learned that the defendant was in possession of a credit card stolen during one of those burglaries, and that defendant had sold to a particular silver broker certain items stolen during one of those burglaries. The affidavit related that Officer Jordon had recovered approximately $20,000 worth of those stolen items from the silver broker, and had verified that those items had been sold to the broker by the defendant. The affidavit further included the facts that the searches of defendant's car had yielded $44,500, approximately one dozen rings, and a luggage tag whose address had been verified as the defendant's address. Finally, the affidavit contained the information that Officer Jordan had contacted several local storage companies and had learned that National Store-All, 201 Williams Avenue, Madison, Tennessee listed a J.R. Jones as the lessee of storage bin number 837. Attached to the affidavit was a listing of all of the items taken in both of the earlier burglaries.
 
 
 30
 All of this information more than adequately linked the defendant to the burglaries, and provided an indication of the volume of the property which defendant was suspected of hiding. We believe that given these facts, the issuing judge could have drawn a reasonable inference that the stolen property was being stored in the defendant's storage bin, and that identification of the particular source of information that defendant was using such a bin was not necessary to show probable cause that the stolen items would be found there.
 
 
 31
 The district court is affirmed on this issue.
 
 V.
 
 32
 To conclude, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 Defendant was not charged for the marijuana found in his car