9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Henry CROOM, IV, Defendant-Appellant.
 No. 93-5108.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 William Henry Croom, IV, appeals his conviction for possession with intent to distribute eight grams of cocaine base in violation of 21 U.S.C. Sec. 841(a)(1), and for carrying and using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1). Croom maintains that the district court improperly denied his motion to suppress evidence and, in the alternative, asserts that the evidence presented was insufficient to support his conviction. For the following reasons, we affirm the district court.
 
 
 2
 On the evening of December 3, 1991, members of the Knoxville, Tennessee Police Department's armed robbery task force attended a pre-shift briefing concerning recent armed robberies of markets and restaurants along Chapman Highway in South Knoxville. At the briefing, a maroon Oldsmobile Delta 88 associated with William Henry Croom was identified as a suspect vehicle in the robberies. Officers Charles Newman and Carl McCarter then began their shift by setting up a surveillance operation on Chapman Highway in an unmarked police car.
 
 
 3
 Sometime after 10:00 p.m., Newman and McCarter saw a maroon Delta 88 pull up at a Subway sandwich shop on Chapman Highway. Five black males got out of the car and entered the shop. The men emerged five minutes later, re-entered the Delta 88, and began driving in a normal manner towards downtown Knoxville. Newman and McCarter followed the Delta 88, along with officers in unmarked cars, in a "hopscotch" surveillance pattern.
 
 
 4
 At this time, the officers received a radio call indicating that an armed robbery had just taken place at the Subway sandwich shop. Newman requested further information and was told that it was a "good" robbery, that five black males in a maroon Delta 88 were involved, and that a weapon had been seen. The Delta 88 that Newman and Carter were following then pulled off the road and stopped. Newman and McCarter pulled in behind the stopped car, got out of their vehicle, and began to approach the Delta 88 on the driver's and passenger's sides.
 
 
 5
 After Newman and McCarter got out of their car, other officers arriving on the scene received a radio call indicating that the Subway shop had not been robbed. By this time several of the additional officers had already left their cars and were approaching the Delta 88. Officer Doug Stiles was approaching the driver's side of the car when he saw that the individual in the front passenger seat was holding a gun. Stiles yelled "gun" to alert the other policemen, and ordered the occupants of the Delta 88 to raise their hands. Officers Newman and Michael Duncan testified at trial that they then saw the passenger in the right front seat open the car door and drop a nine-millimeter semi-automatic handgun to the ground.
 
 
 6
 The police subsequently took the occupants of the maroon Delta 88 into custody. Croom was removed from the front passenger seat, searched, and handcuffed. Police found a digital pager, a cellular telephone, a small amount of marijuana, four hundred forty-three dollars, and six Blazer nine-millimeter cartridges on Croom's person. A nine-millimeter semi-automatic handgun with its safety off, its hammer cocked, and a Blazer cartridge in its chamber was recovered from beneath the Delta 88.
 
 
 7
 Croom initially identified himself as Bill Jones and told the officers that his wallet and identification were in the car. Upon searching the car, the police discovered Croom's wallet on the transmission hump in the front floorboard. The officers found a plastic bag containing eight grams of cocaine, divided into five individual packets, lying in the wallet's fold. Drug Enforcement Agency Special Agent David Lewis testified at trial that the packaging and amount of the cocaine were consistent with distribution, rather than personal use.
 
 
 8
 First, Croom argues that the district court should have granted his motion to suppress the cocaine, the firearm, and the items found on his person. Croom asserts that the police had no reasonable suspicion of criminal activity, based on articulable facts, that could justify an investigatory stop of the Delta 88. See Terry v. Ohio, 392 U.S. 1, 21-22 (1968). We disagree.
 
 
 9
 In Terry, the Supreme Court held that a police officer with a reasonable suspicion of criminal activity, based on articulable facts, may conduct a "stop and frisk" search of an individual "for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Id. at 21-22. The determination of whether the stop is reasonable rests on the application of an objective standard: whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief that the action taken was appropriate." Id. (citing Carroll v. United States, 267 U.S. 132, 162 (1925)).
 
 
 10
 The district court's findings of fact in determining whether to grant a motion to suppress are subject to a clearly erroneous standard of review by this court. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). The district court found that officers Newman and McCarter were unaware that the armed robbery report was in error when they pulled over behind the suspect Delta 88 and got out of their car. This finding of fact is not clearly erroneous on the record before us. In addition, we note that Newman and McCarter did not need to know that the robbery report was correct in order to simply walk up to the stopped Delta 88, which pulled over of its own volition. See U.S. v. Rose, 889 F.2d 1490 (6th Cir.1989) (DEA agents' approach to narcotics suspect's vehicle neither seizure nor unjustified investigatory stop). Accordingly, we believe that the district court did not err in determining that it was reasonable for officers Newman and McCarter to approach the stopped Delta 88.
 
 
 11
 Once these officers got out of their car and saw the right front passenger of the Delta 88 throw a weapon to the ground, it was reasonable for the officers to search the passenger's person and the automobile for their own protection. Terry, 392 U.S. at 27. In Michigan v. Long, 463 U.S. 1032, 1050 (1983), the Supreme Court stated: "If while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." The nine-millimeter handgun, the eight grams of cocaine, and the items on Croom's person were thus discovered during a constitutional search, and the district court properly denied Croom's motion to suppress this evidence.
 
 
 12
 Second, Croom asserts that the evidence presented by the government is insufficient to support his conviction for possession with intent to distribute cocaine, and is therefore also insufficient to support his conviction for possession of a firearm during and in relation to a crime of drug trafficking. We are unpersuaded by this argument.
 
 
 13
 In determining the sufficiency of evidence for a criminal conviction, the relevant question is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); See also United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (judgment reversed for insufficiency of evidence only if, viewing the record as a whole, judgment not supported by substantial and competent evidence). We believe that a rational jury could find Croom guilty beyond a reasonable doubt of (1) knowing (2) possession with intent to distribute (3) a controlled substance under 21 U.S.C. Sec. 841(a)(1) based on the evidence submitted at trial, including Agent Lewis' testimony and the items found on Croom's person and in the car. As Croom does not dispute the fact that he possessed a weapon at the time he was arrested, the firearm charge is also supported by sufficient evidence. See United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 493 U.S. 899 (1989).
 
 
 14
 For the foregoing reasons, the decision of the district court is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation