956 F.2d 270
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry L. GARVEY, Defendant-Appellant.
 No. 91-5433.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendant, Terry Garvey, conditionally pleaded guilty to cocaine possession with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court had denied Garvey's motion to suppress narcotics evidence seized from him during a warrantless search. Garvey appeals the district court's denial. Upon review, we affirm.
 
 I.
 
 2
 In April 1990, in Atlanta, Georgia, the defendant, Terry L. Garvey, purchased an airline ticket for a May 1, 1990, flight from Grand Rapids, Michigan, to Atlanta. On April 30, 1990, Garvey flew from Atlanta, Georgia, to Indianapolis, Indiana. On May 1, 1990, at the Indianapolis Airport, Garvey bought a one-way ticket from Indianapolis via Cincinnati, Ohio, to Grand Rapids with cash taken from a large wad of bills in his pocket. These travel arrangements aroused the suspicion of a confidential informant who relayed the information to Detective Cotton of the Indianapolis Drug Task Force.
 
 
 3
 Cotton spoke to Garvey and found him nervous and evasive. Garvey told Cotton that he was going to Grand Rapids to pick up his wife who would accompany him on his return flight to Atlanta. Garvey then boarded his flight to Cincinnati. Cotton checked with the airlines and learned that Garvey's wife was not booked on Garvey's return flight to Atlanta.
 
 
 4
 This information and a description of Garvey was relayed to Officer Bunning of the Cincinnati Airport Police. Bunning, plain clothed, waited for Garvey's flight. As Garvey deplaned, Bunning made eye contact with him, and followed him approximately 150 yards to a closed ticket counter where Garvey stopped. There, Bunning approached Garvey, identified himself as a police officer, and asked to speak with him.
 
 
 5
 Bunning stated that Garvey appeared very startled and jumped backwards away from Bunning but gave his consent to speak with him. Bunning asked to see his ticket. Garvey's hands were shaking and his voice was quivering as he searched his pockets unsuccessfully for several minutes before realizing that he was holding his ticket in his hand. The ticket showed that Garvey was the same individual about whom Bunning had received information from Indianapolis and that he had a checked bag. Bunning returned the ticket and asked for identification. Garvey gave Bunning what looked like a Louisiana driver's license. Bunning then radioed for a police check on the license.
 
 
 6
 Bunning asked Garvey about his travel plans. Garvey told him that he was going to stay in Grand Rapids until 9:00 p.m. and was going there to buy an antique car. Bunning knew that Garvey's flight from Grand Rapids was scheduled to depart at 5:00 p.m. Garvey inquired why Bunning was asking questions. Bunning responded that an agent from the Indianapolis Airport had called reporting Garvey's nervousness, cash purchase of a one-way ticket, unusual travel arrangements, and that he carried a mobile telephone. Bunning pointed out the inconsistency in the reasons Garvey gave in Indianapolis for going to Grand Rapids. Bunning stated that Garvey responded that the Indianapolis officer had misunderstood him and that Garvey had said that his wife was born in Grand Rapids. Garvey told Bunning that he was carrying $3,000 in cash and had another $1,000 in his checked luggage.
 
 
 7
 Bunning asked if he could search Garvey's person and his bag. Garvey consented and started removing things from his pockets. Bunning stopped him, saying that he wanted to search his luggage first, and they proceeded to the baggage area. While on the way to the baggage area, Bunning radioed a plain-clothed police narcotics dog handler, Eldridge, and asked him to have Garvey's luggage sniffed by canine "Pete" for the presence of drugs. Garvey reiterated his consent regarding the search of his bag. Bunning received a radio report that the Louisiana license could not be located in the law enforcement information system. Bunning asked to see the license again and concluded that it appeared to be a fake.
 
 
 8
 Bunning and Garvey were met at the baggage area by Eldridge who stated that Pete alerted positive to Garvey's luggage. Evans, a uniformed officer, also met them. Garvey again consented to the search of his bag. Inside the bag, officers found $1,000 in $20 denominations wrapped in a rubber band. Although Pete expressed great interest in Garvey's bag, Bunning was unable to find any contraband. Bunning reported that as he was kneeling down with Garvey's bag he noticed, for the first time, a bulge in Garvey's coat pocket. Bunning stated that he reached for the pocket while asking Garvey what was in his pocket. Garvey grabbed his pocket, jumped back, stating that he could not be searched. Startled by Garvey's sudden move, and fearing that Garvey might be reaching for a firearm, Evans responded by trying to draw his revolver which was beneath a raincoat he was wearing. Bunning, who saw Evans react, grabbed Garvey in a bear hug and reached into Garvey's pocket. Bunning removed two plastic bags which contained a substance later determined to be cocaine. It was also determined that a Visine container which had fallen out of Garvey's pocket contained a liquid cocaine solution.
 
 
 9
 Bunning, after finding the plastic bags, told Garvey that he was under arrest for possession of cocaine and administered Miranda warnings. Garvey was searched; the police recovered $3,000 and six syringes.
 
 
 10
 Garvey was subsequently charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Garvey filed a motion to suppress the seized cocaine which was denied. Garvey then entered a conditional guilty plea, was sentenced, and filed this timely appeal.
 
 II.
 
 11
 Garvey argues that his initial consent was coerced and expressly withdrawn. He also claims that since the officers found no contraband in his suitcase there was no reasonable basis for suspicion. Thus, he maintains the warrantless seizure and search of his pocket violated the Fourth Amendment and the evidence obtained should have been suppressed.
 
 
 12
 The district court found that Garvey consented to the search of his bag. The court found that the search of his pocket was lawful because the officers had reason to believe that he was carrying drugs and reasonably responded out of fear for their safety relative to the "pocket incident." We overturn a district court's factual findings made after a suppression hearing only if they are clearly erroneous. United States v. Kelly, 913 F.2d 261, 264 (1990). We review the court's application of the law to those facts de novo.
 
 
 13
 Garvey claims he was coerced because Bunning followed him 150 yards from the plane before questioning him and confronted Garvey with the discrepancy in the reason he gave Bunning and Indianapolis Detective Cotton for the Grand Rapids trip. He claims that a reasonable person would conclude that he was not free to leave. In addition, he apparently claims that the government was obligated to obtain a search warrant before responding to an informant's tip. We disagree.
 
 
 14
 Initial questioning in a public place by a police officer who identifies himself does not, without more, implicate the Fourth Amendment. Florida v. Royer, 460 U.S. 491, 497-98 (1983). Bunning asked Garvey's permission to question him, did not raise his voice or threaten him, displayed no force, and returned documents to Garvey after perusal. We cannot conclude that because Bunning explained why he was asking questions or that he confronted Garvey with a discrepancy in answers is sufficient, under these circumstances, to vitiate consent. See United States v. Cooke, 915 F.2d 250 (6th Cir.1990) (affirming voluntary consent where plain-clothed officer explained, prior to his request to search, that he was "assigned to the airport to enforce the drug laws"); United States v. Garcia, 866 F.2d 147, 151 (6th Cir.1989) ("[a]bsent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled ...' there has been no seizure") (quoting United States v. Collis, 766 F.2d 219, 221 (6th Cir.), cert. denied, 474 U.S. 851 (1985)).
 
 
 15
 Nor do we find the subsequent actions by the officers in violation of the Fourth Amendment. It was reasonable for Bunning and Garvey to proceed to the baggage area after Garvey consented to the search of his bag. A reasonable person, having given consent, would not be unduly intimidated by the presence at the baggage area of two additional police officers. Moreover, Garvey felt free to withdraw his consent regarding search of his person. Therefore, we conclude that Garvey was not seized at this point and the search of his luggage was consensual. See Cooke, 915 F.2d at 252 (no seizure where reasonable person would not feel he was being detained) (quoting Michigan v. Chesternut, 486 U.S. 567, 574 (1988)); Garcia, 866 F.2d at 150-52.
 
 
 16
 The subsequent seizure of Garvey and search of his pocket was justified. The district court concluded that Garvey, by jumping backwards and reaching for his pocket, led at least one of the officers to fear for his safety and that such fear was reasonable. "[W]e accord considerable deference to the credibility findings of the trial court." Cooke, 915 F.2d at 252. Officer Evans testified regarding his fear that Garvey was reaching for a weapon and stated he had a "sickening feeling [he] wasn't going to get [his service revolver] out in time." (App. 85). Evans also testified that some weapons can pass through airport detection systems without being discovered. Bunning stated that he reacted to Garvey's actions by grabbing him and reaching in his pocket because he "had no idea what [Garvey] was going for...." (App. 45).
 
 
 17
 The district court noted that the totality of the circumstances: Garvey's flight plans, nervousness, and discrepant responses plus the positive dog alert, provided reasonable suspicion that alleged drugs were involved. The court's finding that, against this backdrop, Garvey's sudden and unexpected motions led the officers to reasonably fear for their safety was not clearly erroneous. Where such fear reasonably exists, "an officer can legally search for weapons." Kelly, 913 F.2d at 264 (citing Terry v. Ohio, 392 U.S. 1, 27 (1968). The discovery of contraband made during a legitimate search for weapons need not be ignored nor suppressed. Michigan v. Long, 463 U.S. 1032, 1050 (1983) (citations omitted).
 
 
 18
 AFFIRMED.