972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America Plaintiff-Appellee,
v.
Glenn Howard SONSHINE, Defendant-Appellant.
 No. 91-2195.
 United States Court of Appeals, Sixth Circuit.
 Aug. 11, 1992.
 
 Before DAVID A. NELSON, SILER and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Glenn Sonshine appealed the conviction imposed pursuant to his plea of guilty to a charge of possession with intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1), asserting that the district court erred in denying his motion to suppress evidence. He charged that he was unconstitutionally seized when law enforcement officers encountered him outside the Detroit, Michigan airport terminal because the officers lacked the level of suspicion required as a predicate to an investigative stop. Further, he contended that the officers lacked the reasonable suspicion required to detain his baggage for a canine search and that his luggage had been detained for an unreasonable period of time in violation of his Fourth Amendment rights.
 
 
 2
 On June 21, 1990, at approximately 7:30 p.m., Agent Marwan Taleb (Taleb), assigned to the DEA Task Force at the Detroit Metropolitan Airport, observed the defendant exit from an airplane which had arrived from Miami, Florida. He noticed that the defendant was wearing a heavy sweater and a jacket, even though he had just arrived from Miami and the temperature in Detroit was in the mid-80s. He also noted that defendant was carrying two carry-on garment bags. Taleb stated that the defendant acted in a nervous manner, i.e., he continuously looked around him and over his shoulders. Taleb followed the defendant as he proceeded along the concourse, through the Marriott lobby located in the airport terminal, and exited the terminal where he approached an automobile apparently awaiting his arrival.
 
 
 3
 After the defendant placed his baggage into the vehicle, Taleb approached him, identified himself as a police officer, displayed his badge, and requested a consensual short conversation with the defendant. The defendant agreed. Taleb then requested permission to examine the defendant's airline ticket. The defendant initially explained that his ticket was in his garment bag and thereafter stated that he left the ticket on the plane. Taleb subsequently asked the defendant if he would produce his driver's license. The defendant displayed an expired driver's license application. Taleb noticed that the defendant was perspiring, and his hands and lips were trembling. The defendant's jacket and sweater pockets were noticeably bulging. At this point, Taleb's partners arrived at the scene: Agents Saunders, Seitz and Matheson. The agents identified themselves as narcotics officers. At no time did the officers display their weapons or position themselves in such a manner as to hinder Sonshine's movements.
 
 
 4
 Agent Saunders requested the defendant's permission to search his baggage. He explained to the defendant that from his observations of the defendant's physical appearance, his actions and conversations with the officers, a consensual search of the defendant and his baggage would be helpful to assess their future action. The defendant thereupon leaned into the window of the waiting vehicle to speak with the driver, later identified as Ann Brady. At that moment, the agents noticed a clear white plastic bag inside the inner pocket of the defendant's jacket.[1] Sonshine denied the request to search his baggage. Subsequently, Saunders advised the defendant that he was going to detain his bags for approximately 30 minutes to conduct a canine inspection, but since he, the defendant, was not under arrest, he was free to either accompany the officers or to leave. Saunders requested permission to perform a pat down search of the defendant's person. The defendant consented to the search if it would be conducted in a private area. After advising the defendant again that he was not under arrest, the agents and the defendant proceeded to the airport DEA office.
 
 
 5
 Once the officers and the defendant arrived at the office, Taleb telephoned the canine handler. The defendant consented to a search of his person which revealed no controlled substances. The defendant, however, denied a second request to search his baggage. The agents permitted him to use the office telephone. The defendant made arrangements to meet an unidentified woman at the "same place" and left the DEA office.
 
 
 6
 Approximately 45 minutes had transpired from the time of the initial encounter and the arrival of the canine handler. Fifteen minutes after the dog reacted positively to the baggage search, the defendant was located within the airport terminal and was requested to accompany the agent to the DEA office because the dog "had hit on his bags." The defendant was not placed under arrest.
 
 
 7
 The defendant again denied the agents permission to search his baggage. He was then told that a search warrant would be obtained.
 
 
 8
 At approximately 1:00 a.m., Sonshine was advised that he was free to leave because the officers had been unable to obtain a search warrant. The defendant left the DEA office. The warrant was subsequently issued at 2:00 a.m., and executed at 2:30 a.m., when a search of the defendant's baggage disclosed approximately 527 grams of cocaine. The defendant never returned to the DEA office and was apprehended and arrested a few months after the incident.
 
 
 9
 On November 8, 1990, the defendant was indicted in the Eastern District of Michigan and charged with one count of possession with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. 841(a)(1). On March 7, 1991, the defendant filed a motion to suppress evidence. The district court conducted an evidentiary hearing on the motion at which time both parties presented witnesses. The court found as a matter of fact that the testimony of the defendant and Brady was "totally unbelievable and I am totally and completely disregarding the testimony. I think it was totally and completely fabricated ..." Accordingly, the court concluded that the initial confrontation was a consensual police-citizen encounter. The court further determined that the agents had the requisite reasonable suspicion to detain the defendant's baggage for a canine search. Moreover, the court found that no unusual or improper detention of the defendant's luggage occurred since the canine search was conducted and completed within approximately 40 to 45 minutes after the agents initially confronted the defendant and that the elapsed time was not unreasonable. Accordingly, the court denied the defendant's motion to suppress the drugs which were discovered in his luggage.
 
 
 10
 Subsequently, on April 15, 1991, the defendant pleaded guilty to the indictment pursuant to an agreement. He reserved his right to appeal the district court's denial of the motion to suppress evidence. On October 15, 1991, the court sentenced the defendant to fifty-seven months imprisonment and a three year term of supervised release. The defendant timely filed his notice of appeal on October 17, 1991.
 
 
 11
 On appeal, the defendant charged that the court erred when it denied his motion to suppress evidence because the officers lacked the requisite level of suspicion required as a predicate to an investigative stop and detention of his baggage for an unreasonable period of time in violation of his Fourth Amendment rights.
 
 
 12
 The finding that a citizen has been subjected to a Fourth Amendment search and seizure involves a question of fact and cannot be reversed unless clearly erroneous. United States v. Grant, 920 F.2d 376, 381 (6th Cir.1990). Clear error rarely occurs in the context of airport police-civilian encounters because resolution of Fourth Amendment issues in this milieu is "going to turn largely on credibility determinations made by the district judge at the suppression hearing." United States v. Cooke, 915 F.2d 250, 252 (6th Cir.1990).
 
 
 13
 Accordingly, the defendant's assignment of error is without merit. This Court concludes that the district court correctly determined that the initial encounter between the defendant and Agent Taleb was a consensual police-citizen encounter. Florida v. Royer, 460 U.S. 491 (1983); United States v. Flowers, 909 F.2d 145 (6th Cir.1990). The defendant agreed to consensual conversation with Agent Taleb without hesitation.
 
 
 14
 The district court did not err when it concluded that during the consensual police-citizen encounter the officers acquired the requisite reasonable suspicion to believe the defendant's luggage contained controlled substances and that the seizure of the baggage was constitutionally conducted. When law enforcement officers detain luggage of a suspect to perform a canine search, the United Supreme Court has concluded that the limitations applicable to investigative detentions of a person should define the permissible scope of the detention of property, e.g., baggage. United States v. Place, 462 U.S. 696 (1983). In other words, the principles of Terry v. Ohio, 392 U.S. 1 (1968) "would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." Id. at 706. In determining whether the seizure of the defendant's baggage exceeded the permissible limits of a Terry-type investigative stop, the Supreme Court considered the length of time the baggage was detained, and the diligence of the police officers in pursuing the investigation. Id. at 711. The Court rejected the idea of providing law enforcement authorities with a clear rule to guide their conduct as such a limit would undermine "the equally important need to allow authorities to graduate their responses to the demands of any particular situation." Id. n. 10.
 
 
 15
 In the instant action, the law enforcement authorities had the requisite reasonable suspicion to seize defendant's baggage for a canine search, e.g., the expired driver's license application, the conflicting statements concerning the location of the defendant's airline ticket, the bulges in defendant's clothing, and the bag containing a white powdery substance. Furthermore, the defendant's baggage was detained for only approximately 45 minutes until the canine search was concluded because the canine unit was not immediately available to conduct it more expeditiously. Throughout the period of controversy here in issue, the defendant, at his option, was free to leave the premises. He exercised that freedom on two occasions and left the DEA office on his own accord. Accordingly, the court's conclusions that the time of detention of the luggage was reasonable and its findings that no unusual or improper circumstances attached to the detention of defendant's baggage were not clearly erroneous.
 
 
 16
 Having considered the record in its entirety, the briefs and arguments of counsel, the disposition of the district court is hereby AFFIRMED.
 
 
 
 [1]
 At the time of the confrontation, the agents were unaware of the content of the package, which was later analyzed as aspirin