12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tollie J. SMITH, Defendant-Appellant.
 No. 93-5167.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1993.
 
 Before: MERRITT, Chief Circuit Judge; and BROWN and WELLFORD, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant was arrested and pleaded guilty to one charge of possession with intent to distribute crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1). The defendant's guilty plea was conditional since he contested the validity of a search. The defendant alleges that the arresting police officer violated the Fourth Amendment by searching his vehicle without consent or probable cause. In uncorroborated testimony hampered by inconsistency, the police officer testified that the defendant verbally consented to the search. Because the district judge gave no reasons for crediting this inconsistent testimony of the officer, particularly in the face of the other proof, and because we are uncertain whether the burden of proof was properly placed, we REMAND for a redetermination of the consent issue.
 
 I.
 
 2
 On the afternoon of January 9, 1992, Officer David Tate testified that he was sitting in his marked Memphis police car near the intersection of Latham and Lucy streets in Memphis, Tennessee. Lucy, a one-way street running east, intersects in a "T" with Latham, a two-way street running north and south. The defendant's car was parked facing southbound on Latham, just south of the Lucy/Latham intersection. Tate's testimony indicated that he was parked on Lucy, approximately 100 yards from and east of the intersection.[1]
 
 
 3
 At his location on Lucy for between five and ten minutes, Tate observed a woman walking west on Lucy toward Latham, carrying a radar detector. Assuming that a drug transaction was about to take place in which the radar detector was a factor, Tate pretended to be doing some paperwork in his cruiser in an effort to be inconspicuous. After the woman reached the defendant's car, Tate testified, he waited ten to fifteen seconds before pulling in behind the defendant's car. From the above recited facts, it is evident that the officer would have had to go around the block or proceed directly going the wrong way on a one-way street to reach defendant's car.
 
 
 4
 Upon seeing Tate pull up to Smith's car, the woman got out of the car and threw the radar detector into the back seat. Tate questioned the woman, who explained that she was trying to sell the radar detector for $5. After approaching and questioning the defendant, Smith confirmed that the woman had tried to sell the radar detector, but reportedly said the price quoted was $15. According to Tate, this "price discrepancy" aroused his suspicions, and he asked if Smith had any drugs in the car. Tate testified that Smith answered, "No, you can look." In light of what was in the car, one cannot help but be surprised by such a response.
 
 
 5
 Tate then opened the car door, which allowed him to see a small bulge under the driver's side floor mat. He lifted the mat and discovered a bag containing a small quantity of crack cocaine.[2] As Tate was about to find the cocaine, Smith fled the scene. Tate stayed on the scene with the woman involved, and Smith was later apprehended.
 
 
 6
 Smith's testimony and that of Tate, not unexpectedly, differed on the consent issue. Smith described the woman's attempt to sell the radar detector, and testified that he was testing the unit to see if it worked. He testified that he never gave consent to search, but that Tate threw his driver's license in the trunk, and simply opened the car door and began a search.
 
 
 7
 At the close of the suppression hearing, the district judge adopted the government's position and denied the suppression motion without any express findings of fact on the consent question. This appeal followed.
 
 II.
 
 8
 "[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that consent was, in fact, freely and voluntarily given." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). Consent is valid only if "unequivocal, specific, and intelligently given, uncontaminated by any duress and coercion." United States v. Williams, 754 F.2d 672, 675 (6th Cir.1985).
 
 
 9
 The existence of valid consent is a question of fact, and a district court's finding with regard to consent will be overturned only if clearly erroneous. United States v. Kelley, 913 F.2d 261, 265 (6th Cir.1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Although a trial judge's determination regarding credibility is entitled to great deference on review, when the key witnesses' story is internally inconsistent or implausible, "the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985).
 
 
 10
 The physical layout of the arrest scene calls into question the plausibility of Tate's description of what occurred. The police cruiser was parked on a one-way street apparently, and logically, pointing away from the intersection of Lucy and Latham, some distance away from where Smith's car was parked. The officer testified that he had a clear view of Smith's car from probably 350 feet away. Tate testified that the woman with the radar detector came from behind the police cruiser on her way to Smith's car just south of the intersection. He also testified that he pretended to be writing when the woman passed so as to remain inconspicuous. This would indicate that he was parked headed west on a street requiring one-way eastbound traffic. This is inconsistent with reason and logic.
 
 
 11
 If the police cruiser were parked legally on the one-way street, then it is hard to imagine that Tate had a clear view of Smith's car, some considerable distance away, looking backward. Tate would be looking over his shoulder, through the rear window or through the rear view mirror. The woman who approached Tate could not have come from the rear had he been legally parked on Lucy Street. We find it difficult to accept that Tate could have made a legitimate attempt to look inconspicuous in a police cruiser parked the wrong way on a one-way street.
 
 
 12
 Additionally, Tate testified that he simply pulled up behind Smith's car within ten to fifteen seconds after the woman got in Smith's car. This maneuver would have required Tate to either drive the wrong way on a one-way street for some one hundred yards, or to proceed around the block to arrive at the scene. Either manner subjects Tate's testimony to question.[3]
 
 
 13
 At oral argument, the government was unable to satisfy our doubts regarding Tate's description of the physical setting and what actually happened. Although not directly relevant to the crucial issue of consent, the inconsistencies in Tate's testimony undermine, to some extent, the credibility of his account. This is especially true in the face of Smith's unequivocal testimony that he did not consent to the search. There is no corroborating testimony to either side's version.
 
 
 14
 Although we are not prepared to reverse Smith's conviction and hold that the search was unconstitutional, we are satisfied that we should remand for further consideration of the consent issue. The district court denied the suppression motion with the following cryptic statement:
 
 
 15
 The Court concludes that the government's position is supported by the evidence in this case based on the hearing that we have conducted here today. The Court will adopt that position and deny the motion to suppress and ask the government to prepare a brief order to that effect.
 
 
 16
 In a recent case, we noted that when credibility is the key issue, "it would be helpful if district judges or magistrates conducting suppression hearings would indicate why they are crediting one party over another when the versions of what occurred differ in material detail." United States v. Cooke, 915 F.2d 250, 252 (6th Cir.1990).[4]
 
 
 17
 In this case, the testimony regarding consent is completely contradictory. Under the peculiar circumstances of this case, we are unable to affirm the district court's decision absent some further consideration and explanation for the district court's decision. We remand for the district court to revisit the question of whether the defendant voluntarily gave his unequivocal consent to the search.
 
 
 18
 We remand for the additional purpose of ensuring that the district judge applied the proper standard. In his own words, the district judge denied the suppression motion because he found that the government's position was "supported by the evidence." We assume that in this context, the "government's position" is that Smith gave consent. As we have already noted, however, the government bears the burden of proving unequivocal consent by a preponderance of the evidence. Schneckloth, 412 U.S. at 219. The Supreme Court has held that a factual finding may be clearly erroneous, "although there is evidence to support it." United States Gypsum Co., 333 U.S. at 395. Thus, we remand for the additional purpose of ensuring that the district court determines whether the government carried its burden of proving valid consent.
 
 
 19
 For the reasons stated, we REVERSE and REMAND for the reasons and purposes indicated.
 
 
 20
 MERRITT, Chief Judge, concurring.
 
 
 21
 This is a case that should never have been brought in federal court. A minor street crime case made entirely by the local police, it is another example, among many, of the past practice of the United States Attorney's office in Memphis which has insisted on filling up the federal court there with these kinds of minor street crime cases. Despite the efforts of the district judges in Memphis to encourage the United States Attorney's office to establish a rational charging policy in drug and firearms cases, no such policy has been established, and as a result cases like this continue to be brought. The time taken up with a case of this type can never be recovered. It means that significant civil cases cannot be tried.
 
 
 22
 Like the court, I am concerned about the veracity of Officer David Tate, the arresting officer in the case. We have been advised in another case argued on the same day as this one that an internal affairs investigation in the Memphis Police Department has found that Officer Tate has been "untruthful" on prior occasions. On remand the district court may want to consider Officer Tate's reputation for truth and veracity and any prior instances of untruthfulness.
 
 
 
 [1]
 The record does not show which way Tate's car was pointing, but at oral argument, the government agreed that the car was probably facing east, since Lucy is a one-way street running east
 
 
 [2]
 This case involved a typical street transaction of some 21 grams of crack cocaine allegedly witnessed only by a single Memphis police officer. State court would seem to be a more appropriate venue for a case of this type
 
 
 [3]
 The defendant's testimony was that he saw the cruiser approach from the south and make a U-turn at the intersection
 
 
 [4]
 In United States v. Strahan, 984 F.2d 155, 157 (6th Cir.1993), we noted that the language in Cooke suggesting that district courts state some rationale for crediting one witness over another applied to airport search cases. But the reason for the request for more complete explanation by this court was that "credibility is a key issue." Cooke, 915 F.2d at 252. Credibility is the key issue in this case
 We do not intend to extend Cooke, or authorize a remand every time a district judge provides only minimal support for a conclusion that consent was voluntarily given. Our holding is limited to rare situations like this one when credibility is the only real issue, when neither party's testimony is corroborated, and when the witness the judge credited told an objectively questionable story.