30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald McATEE, Defendant-Appellant.
 No. 93-6051.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1994.
 
 Before: MILBURN and NELSON, Circuit Judges, and COOK, Chief District Judge.[1]
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction for bank robbery. The defendant contends that the district court erred in denying a motion to suppress evidence of his confession, the confession allegedly having been obtained by coercion and without benefit of Miranda warnings. Because we conclude that the district court committed no clear error in the factual findings on which its ruling was predicated, we shall affirm the conviction.
 
 I.
 
 2
 On September 19, 1990, two men robbed the Sovran Bank in Germantown, Tennessee. When subsequently picked up for questioning by the police, Marvin Anderson, one of the perpetrators of the robbery, identified the defendant, Ronald McAtee, as his accomplice. Police Sergeant James Nichols then went to the Shelby County Jail, where Mr. McAtee was serving a sentence for a different burglary, and brought him to the police station for questioning.
 
 
 3
 The questioning was performed by Sergeant Nichols and his partner, Sergeant Hightower. In the course of the interrogation Mr. McAtee gave a tape recorded confession in which he admitted his participation in the robbery. The confession contains an acknowledgement by Mr. McAtee that the confession was voluntary and that he had been advised of his Miranda rights prior to his making incriminating statements.
 
 
 4
 Mr. McAtee also signed an advice of rights form in the presence of both officers. By signing the form the defendant indicated that he had been informed of his rights, that he understood them, and that, having his rights in mind, he wished to talk to the officers about the robbery.
 
 
 5
 Mr. McAtee was offered the opportunity to make a telephone call. He declined this offer in writing.
 
 
 6
 Mr. McAtee moved to have his confession excluded from evidence at trial on grounds that he had not been informed of his Miranda rights and that the confession was otherwise involuntary. The testimony offered at the hearing on the suppression motion may be summarized briefly as follows.
 
 
 7
 Sergeant Nichols testified that he picked up Mr. McAtee at a penal farm and drove him to the robbery squad office for questioning. Before putting Mr. McAtee in the car, the sergeant said, he placed him in handcuffs, informed him of his Miranda rights, and told him he was under investigation for a bank robbery. Sergeant Nichols stated that he told Mr. McAtee to think about what he should do as they drove back to the robbery squad office.
 
 
 8
 When they arrived at the office, Sergeant Nichols said, he offered Mr. McAtee a cup of coffee and a cigarette. Sergeant Hightower then joined them, whereupon Nichols orally advised Mr. McAtee of his Miranda rights a second time. When subsequently confronted with the incriminating statement of his co-defendant and with photographs of himself at the scene of the robbery, Sergeant Nichols testified, Mr. McAtee confessed.
 
 
 9
 Sergeant Nichols said that the only promises given to Mr. McAtee were that the prosecutor would be made aware of his cooperation and that the sergeant would check with his superiors to see if Mr. McAtee could be held at the penal farm, and not at the Shelby County Jail, while under indictment for the robbery. Sergeant Nichols testified that Mr. McAtee had made this request because he was happy with the job he had as a cook at the penal farm and did not want to lose this position. Sergeant Nichols did not have authority to grant the request, but said that he promised the defendant he would pursue the matter on the defendant's behalf.
 
 
 10
 Evidence was subsequently presented to show that Mr. McAtee had never, in fact, been housed at the penal farm. To the contrary, the records showed that Sergeant Nichols had picked up Mr. McAtee for questioning at the Shelby County Jail. In light of this information, it became apparent that Sergeant Nichols' recollection about the events of that day had been faulty. Rather than placing him in a police car, Sergeant Nichols probably would have escorted Mr. McAtee from the jail to the robbery squad office on foot.
 
 
 11
 On re-direct examination, Sergeant Nichols admitted that he had some difficulty remembering the precise course of events of that day due to the large number of suspects with whom he deals. Sergeant Nichols testified, however, that his recollection of giving a Miranda warning was more than mere speculation, because it was his unfailing practice to give defendants their warnings immediately and prior to any questioning.
 
 
 12
 The errors in Sergeant Nichols' recollection having been brought to light, the district court requested an opportunity to question Sergeant Hightower about his recollection of the events. Sergeant Hightower confirmed that Mr. McAtee had been orally advised of his Miranda rights prior to questioning at the robbery squad office and prior to the signing of the waiver of rights form. But while Sergeant Nichols had testified that it was he who had given this oral Miranda warning, Sergeant Hightower testified that the second Miranda warning came from him.
 
 
 13
 Mr. McAtee's version of the events differs markedly from the story told by Sergeant Nichols. According to Mr. McAtee, Sergeant Nichols never informed him of his Miranda rights before confronting him with the incriminating photographs and his co-defendant's statement. After he initially denied participation in the robbery, Mr. McAtee testified, the officers told him he was hurting himself by maintaining his innocence. The officers also told him, according to Mr. McAtee, that his co-defendant might be going to prison for so long that he might never get out; the officers allegedly told Mr. McAtee that a confession would prevent him from suffering the same fate. Mr. McAtee says he then admitted his guilt, after which the officers read him his Miranda rights for the first time that day, had him sign the consent form, and taped his formal confession.
 
 
 14
 After hearing the testimony of the officers and Mr. McAtee, the district court found as a fact that Mr. McAtee had been given Miranda warnings--orally, at least--prior to his confession. The court further found that that confession had been given voluntarily. The motion to suppress the confession was therefore denied. The defendant eventually pleaded guilty to the charges pursuant to a Rule 11 plea agreement, reserving his right to appeal the denial of his suppression motion. Mr. McAtee was subsequently convicted and sentenced to imprisonment for a term of 104 months. This appeal followed.
 
 II.
 
 15
 This court will not disturb the district court's factual findings unless they are clearly erroneous. United States v. Taylor, 956 F.2d 572, 576 (6th Cir.) (en banc), cert. denied, 113 S.Ct. 404 (1992); United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989). We cannot say that the findings at issue here fail to pass muster under that standard.
 
 
 16
 The defendant argues that his version of the events is corroborated by the timing of his signing of the waiver forms; the officers' version of the events, he says, is inconsistent with the times noted on those forms. Seventy minutes elapsed between the time Mr. McAtee was signed out of the Shelby County Jail and the time he signed the advice of rights form, according to the documents. This indicates that he faced questioning before being advised of his Miranda rights, Mr. McAtee argues, because the jail is no more than a twenty minute walk from the office where he gave his confession.
 
 
 17
 Both officers testified, however, that Mr. McAtee was orally advised of his rights prior to any questioning. The signed advice and consent form is merely evidence that the defendant consented to questioning and gave his confession freely. "[T]he only real issue in this case," as the district court noted, "is whether or not the defendant was given an oral Miranda warning before conversation which he says he had in which he is alleged to have confessed to this crime orally without being tape recorded." Both officers indicated that there was no conversation about the robbery prior to the oral Miranda warnings, and the officers' version of the events is not necessarily incompatible with the seventy-minute delay in signing the form.
 
 
 18
 Mr. McAtee also points to the flaws and inconsistencies in the testimony of the officers who took his confession. He argues that the district court erred as a matter of law in crediting Sergeant Nichols' "speculative" testimony in preference to his own specific and clear recollection of events.
 
 
 19
 As the government notes, however, Sergeant Nichols did testify that he advises all suspects of their Miranda rights immediately upon taking custody of them. And despite the conflict in their testimony as to which officer it was who gave the second warning, both officers testified that Mr. McAtee was given an oral Miranda warning as soon as Sergeant Hightower joined them at the robbery squad office. As further corroboration that Mr. McAtee received adequate warnings, the government offers the signed acknowledgement plus the defendant's statement at the beginning of the taped confession that he had been fully advised of his rights.
 
 
 20
 "Findings of fact anchored in credibility assessments are generally not subject to reversal on appellant review," this court noted in Taylor, 956 F.2d at 576. The court further observed that "[c]lear error rarely occurs ... [where] resolution ... is 'going to turn largely on credibility determinations made by the district judge at the suppression hearing.' " Id. (quoting United States v. Cooke, 915 F.2d 250, 252 (6th Cir.1990)). We see no clear error in the district court's conclusion that the defendant received Miranda warnings prior to his confession. The district court obviously believed Sergeant Nichols when he testified that he always gives Miranda warnings prior to questioning, and obviously believed Sergeant Hightower when he testified that Mr. McAtee was orally advised of his Miranda rights prior to any questioning (and certainly prior to the taped confession). Notwithstanding the troubling discrepancies in the officers' testimony, we conclude that there is sufficient evidence in the record to support the finding that Mr. McAtee received Miranda warnings before he gave his confession.
 
 
 21
 The defendant also argues that, whether or not he was given Miranda warnings, the confession was coerced. Regardless of whether Miranda warnings have been given, a confession must be "made freely, voluntarily and without compulsion or inducement of any sort." Haynes v. Washington, 373 U.S. 503, 513 (1963) (quoting Wilson v. United States, 162 U.S. 613, 623 (1896)). See also Colorado v. Connelly, 479 U.S. 157, 163 (1986). The test for voluntariness is whether, considering the totality of the circumstances, the defendant's will was overborne by the conduct of the officers. Mincey v. Arizona, 437 U.S. 385, 398-402 (1978); Haynes, 373 U.S. at 513.
 
 
 22
 The defendant contends that the officers made coercive statements to pressure him to admit guilt. He further maintains that he had been suffering withdrawal symptoms at the time of the confession, and this made it easier for his will to be overborne. The district court listened to extensive testimony and the taped confession, however, and found no evidence of distress or coercion. We are not persuaded that the district court committed clear error in finding the confession to have been made freely and voluntarily.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The Honorable Julian A. Cook, Jr., Chief Judge of the United States District Court for the Eastern District of Michigan, sitting by designation