**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gus MURPHY, Defendant–Appellant.**

**No. 00–6010.**

United States Court of Appeals,
Sixth Circuit.

Jan. 29, 2002.

Before MOORE and COLE, Circuit Judges; O'MEARA, District Judge.*

O'MEARA, District Judge.

Gus Murphy pled guilty to the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) in March 2000. His conviction was based upon a firearm discovered in his home during the execution of a search warrant. Murphy moved to suppress the firearm and argued that the police officers who executed the warrant failed to comply with the knock-and-announce statute, 18 U.S.C. § 3109, and the Fourth Amendment by not waiting a reasonable time before forcibly entering his home. The district court, Jon McCalla, J., denied the motion, and Murphy entered a conditional plea and reserved his right to appeal. On appeal, Murphy argues that remand is necessary because the district court failed to make the essential findings of fact on the record as required by Fed. R.Crim.P. 12(e). This court disagrees and AFFIRMS the decision of the district court.

## I. BACKGROUND

Between 7 and 7:30 a.m. on December 7, 1999, approximately ten police officers and federal agents executed a search warrant at Murphy's home in Shelby County, Tennessee. Officer Jeff Cox of the Bartlett Police Department, assigned to the Memphis Drug Task Force, was the "ram tool" officer who actually forced open the door of Murphy's home. At the suppression hearing, Cox testified that after the officers were in position outside the house, FBI Special Agent Daniel Sobolewski knocked on the door, stated, "police, search warrant," and then repeated this statement. According to Cox, no other officer said anything at this point. Cox and Sobolewski then waited briefly before Cox knocked in the door. Cox was unwilling to estimate exactly how long they had waited, but stated that it was "enough time for any reasonable person who was willing to open the door ... to come from anywhere in that house to open the door." J.A. at 49. On cross-examination, however, he admitted that they had waited less than one minute. J.A. at 54.

Sobolewski testified that he "knocked quite hard on the front door, announced, 'police, search warrant,' proceeded to identity [themselves] as DEA, and waited an ample amount of time for somebody to come and open the door." J.A. at 60–61. He was not sure how many times he actually announced, "police, search warrant," but stated that he repeated the statement in a "continuous" manner. He also refused to estimate how long he and Cox waited before entering the home, but stated that "it would have been plenty of time for somebody inside this house to come to that door." *Id.*

* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

Sobolewski also testified that Murphy said he had seen the officers approaching the house. He asked Murphy why he did not open the door, and Murphy answered that he knew the officers were going to come through the door anyway. J.A. at 63.

The United States also called David McGriff, the DEA Task Force Officer who applied for the search warrant. He was present during the execution of the warrant but did not actually enter the home. McGriff explained that he heard the other officers knocking and announcing themselves as he exited his vehicle but was not sure whether that began before he arrived. He testified that he heard more than one officer yelling, but could not specify how many officers he heard. He said that the officers allowed a "reasonable amount of time for somebody to come answer the door" before they entered the home but would only estimate that it was "a number of seconds." J.A. at 35.

Murphy points to a number of minor inconsistencies in the officers' testimony. First, McGriff testified that he heard more than one officer yelling, but Cox and Sobolewski both testified that only Sobolewski announced the officers' presence. Second, while Sobolewski testified that Officer McGriff had provided him with a layout of the house prior to the raid, Cox testified that the officers had not known the layout of the house prior to the raid. Third, Cox testified that Sobolewski said "police, search warrant" only twice, but Sobolewski himself stated that he made the announcement repeatedly.

Murphy called Ms. Kim Smith, his significant other, as a witness. She was also inside Murphy's home during the execution of the warrant. Smith testified that before she heard the officers knock on the door, Murphy saw them approaching the house and told her the "Feds" were there. Murphy then headed toward the door, but before he could answer it, the police knocked "like three times and then they entered." J.A. at 71. As to the elapsed time between the knocking and the entry, Smith said "I don't even think it was one minute. It could have been a minute. It wasn't long." J.A. at 72. On cross-examination, she stated that the time was "[j]ust a matter of seconds" and "about a minute." J.A. at 73–74. Smith's apparent lack of appreciation of the length of a minute led both Murphy's counsel and the district judge to question her about this.

After considering the full record, including the testimony described above, the district court denied Murphy's motion to suppress. The court explained its ruling at length and on the record at the change of plea hearing on March 10, 2000:

Mr. Murphy, what obviously occurred while we were here, and, of course, you were here also, was that we heard from a number of people. Mr. McGriff testified, Mr. Cox and Mr. Sobolewski and, of course, they all indicated that there was a sufficient—there was a knock, there was an announcement and that there was a sufficient period of time to allow for a response to the door, and I don't suppose it was surprise to anybody that that was the position stated by each of them. Obviously, what I was most interested in hearing, certainly was interested in hearing from them, but also from Ms. Smith, because she was there and was in a position to make observations that might have made a difference in the case. In essence, what she said, and you were here, was that it might have been as much as a minute, and there was even sort of an incredulous question, we joked a little bit about, about whether there were 60 seconds in a minute, and she was clear that she understood what she was saying. With that much time, there would not be any real question that there was a sufficient opportunity to respond to the knock and

announce.... Under all of those circumstances ... in light of all of that testimony, including the testimony of Ms. Smith, who, I think, was trying to be very honest, if you want to know the truth, the evidence would clearly preponderate in the determination negative for you....

J.A. at 78–79.

Murphy pointed out to the judge that the court had not said anything about the inconsistencies in McGriff's testimony. The court replied that the pivotal thing was the testimony of Ms. Smith. J.A. at 83. The district judge also briefly explained to Murphy that the standard under the knock-and-announce statute was whether the officers had waited a reasonable time, not whether the wait was one minute or not. He summarized by saying:

> [W]hen Ms. Smith said sixty seconds, I know she didn't mean really—sixty seconds is a long time. I mean it is like forever.... [C]ommon sense and my experience in life would tell me it wasn't sixty seconds, but it was long enough for a person to hear who hears the words police, and when they knock on the door, they were pretty clear....

J.A. at 86.

Finally, the judge said that Smith "didn't support your position, that's the answer." J.A. at 87. After this discussion, Murphy entered his conditional guilty plea.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(e) provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." This circuit has confirmed that Rule 12(e) places a mandatory obligation on judges to make these factual findings. *United States v. Moore*, 936 F.2d 287, 289 (6th Cir.1991)(per curiam).

If the court makes the required findings, they are upheld by an appellate court unless they are clearly erroneous. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

### B. LAW AND ANALYSIS

Murphy moved to suppress based on the argument that the officers who conducted the search of his home failed to follow the knock and announce rule. That rule is codified at 18 U.S.C. § 3109:

> An officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Under this rule, the police must identify themselves and give the occupants a "reasonable period of time" to respond to their announcement before entering the house. *United States v. Finch*, 998 F.2d 349, 354 (6th Cir.1993). This test is a standard, not a bright line rule. The critical question is how long it should reasonably take a person inside the house to come to the door. *See United States v. Spikes*, 158 F.3d 913, 927 (6th Cir.1998).

For this appeal, Murphy argues that remand is necessary because the district court did not make the requisite findings of fact about the length of time between the announcement and the entry. He asserts that the district court relied upon Smith's testimony even though the court itself expressed doubt that her estimate of 60 seconds was correct. He further argues that the court did not resolve the credibility issues regarding the testimony of the three officers and that the testimony of the officers is not credible because of the inconsistencies in their stories.

The cases Murphy relies upon in making these arguments do not, however, support

his position. In *United States v. Moore,* 936 F.2d 287, 289 (6th Cir.1991) (per curiam), this court remanded a suppression decision because the district court had failed to state its essential finding on the record. There, the court had only made a "margin entry." That decision is distinguishable from the present case because the district court's ruling and statement of facts in this case clearly exceed a "margin entry."

Fed.R.Crim.P. 12(e) and the court in *Moore* were concerned with "essential" facts—those necessary for appellate review. 936 F.2d at 289. Here, the district court directly addressed the one essential fact, the amount of time the officers waited before entering Murphy's home. As Murphy acknowledges, the court found the testimony of Kim Smith controlling. Smith was the only witness willing to make any concrete estimate of the time, and she stated that it could be up to one minute. Murphy contends, however, that Smith's estimations of the relevant time are suspect because she was terrified at the arrival of the officers. He also argues that the statements of the three officers that the time was reasonable need further examination in light of their other inconsistent statements.

The flaw in Murphy's argument is that no one testified at the suppression hearing that the officers did not wait a reasonable amount of time between announcing their presence and entering the home. All four witnesses agreed that there was some lapse of time between the knock and announce and the entry. The three officers testified that they waited a reasonable amount of time, and only Ms. Smith gave a specific estimate of up to one minute. Although the district judge stated that he did not really believe Ms. Smith's estimate of one minute, he concluded that her testimony established that the amount of time was reasonable. Smith was Murphy's only wit-

ness, and therefore the judge found that "the reality was that I didn't have any proof that supported the proposition that there was a failure to comply with a knock and announce rule." J.A. at 82. There was no real factual dispute.

Thus, even if the exhortation found in *United States v. Cooke,* 915 F.2d 250, 252 (6th Cir.1990), asking district courts to "indicate why they are crediting one party over another when the versions of what occurred differ in material detail," applied to this case, it would not aid Murphy. Here, there are not different versions of "material detail" regarding the lapse of time.

### III. CONCLUSION

The district court's order denying Defendant's motion to suppress is AFFIRMED.